PER CURIAM:
Honorable Reubin O’D. Askew
Governor, State of Florida
The Capitol
Tallahassee, Florida
Dear Governor Askew:
We have the honor to acknowledge your communication of July 1, 1974 requesting our advice pursuant to Section 1(c), Article IV, Constitution of Florida, relating to certain executive powers and duties.
Omitting the formal parts, your letter reads as follows :
“By virtue of the provisions of Section 1(c), Article IV, Florida Constitution, 1968 Revision, and Rule 2-1 (h), Florida Appellate Rules, I have the honor to request your written opinion as to the interpretation of a portion of the Florida Constitution affecting my executive powers and duties.
“Under Section 7(a), Article IV, Constitution of Florida, I have the authority to suspend from office any ‘state officer’ not subject to impeachment and any ‘county officer’ in each case on certain specified constitutional grounds only.
“The question has arisen whether a superintendent of schools who has been ‘employed’ pursuant to the provisions of Section 5, Article IX, of the Florida Constitution, falls within that class of persons who are subject to suspension under Article IV. It must be stated in all candor that I have not been presented with any evidence which would wholly or partially constitute grounds for suspension of any superintendent of schools in Florida. For that reason no suspension is under consideration in my office at this time, and this fact, I realize, may have some bearing upon the question of whether the Court has jurisdiction to render an advisory opinion to me under the provisions of Article IV, Section 1, of the Constitution.
“However, there is no question hut that an advisory opinion of the Court would provide a valuable guideline to both this office and the various School Boards throughout the state in those situations where a superintendent of schools has been ‘employed’ as opposed to elected, under Article IX, Section S, of the Florida Constitution.
“Article IX, Section 5, states as follows:
“ ‘In each school district there shall be a superintendent of schools. He shall be elected at the general election in each year the number of which is a multiple of four for a term of four years; or, when provided by resolution of the district school board, or by special law, approved by vote of the electors, the district school superintendent in any school district shall be employed by the district school board as provided by general law. The resolution or special law may he rescinded or repealed by either procedure after four years.’
“It is noteworthy that no reference is made in the above constitutional provi *368 sion to the position of superintendent of schools as an ‘office.’ In fact, the complete absence of the term ‘office’ in all of the section is in contrast to 1885 provisions concerning superintendents of schools (See Article XII, Section 2, and Article VIII, Section 6, of the 1885 Constitution of Florida). The Florida Supreme Court has made clear that the prior 1885 language created the constitutional office of school superintendent and that amendments to this language prior to 1968 providing for appointed superintendents in some instances, presupposed the continuance of this status as opposed to employment. See Hancock v. The Board of Public Instruction of Charlotte County, 158 So.2d 519 (1963). The language of the 1968 Revision omits both the term ‘office’ and the term ‘appointed,’ utilizing the word ‘employed’ instead. The cases construing the prior language, therefore, may not be relevant at this time.
“It is noteworthy also that Article IV, Section 7(a), of the 1968 Constitution extends the executive suspension power to ‘state’ and ‘county’ officers but not to officers of other governmental entities such as special districts. Even assuming, therefore, that a superintendent of schools is an officer (as opposed to an employee) for purposes of the above constitutional provisions, the question remains whether he is a ‘county Officer’ for purposes of suspension or is he part of a special district not coming within the reach of the executive suspension power provided by the language of Article IV, Section 7(a) ?
“In summary, the above described changes in the Florida Constitution pose doubt concerning my present constitutional authority with respect to the suspension of superintendents of schools in Florida. I have the honor, therefore, to request your written opinion on the following questions:
“1. May the Governor suspend a superintendent of schools who has been employed pursuant to Article IX, Section 5, Constitution of Florida, 1968, by a district school board ?
“2. If the answer to Question 1 is in the affirmative, is the power of the Governor to suspend exclusive of the power of the school board ?”
Upon receipt of your communication, an Interlocutory Order was entered, announcing that the questions propounded were answerable, and soliciting the filing of briefs by interested parties.
Our answer to your first question is in the negative, so that the second question need not be answered.
Fla.Const., Art. IX, § 5, sets forth a clear distinction between those instances in which school districts remain under the constitutional category of elected school superintendents and that separate class of superintendents created by constitutional amendment wherein districts are allowed to vote to have a locally employed superintendent. The constitution thus provides for a choice of state or local control. The two are mutually exclusive. Such an entirely new plan created by express constitutional amendment submitted to a statewide vote was not merely to change the “means of selection” of the superintendent and nothing else, as argued by amici curiae. This optional method constituted an entirely different scheme as opposed to that of election of the superintendent as a constitutional officer. It provided a separate local option of local employment and service of a superintendent under the district school board.
To allow the dual control contended for would effectively remove the distinction above outlined and would thwart the constitutional purpose. True, it might take the local board “off the hook”, so to speak, in controversial matters, but ours is not a government of “pass the buck.” Each of us must assume the responsibility and leadership of that area in which we have been chosen to serve, no matter the public outcry or unpopularity of the position rightfully *369 indicated which we are compelled to take to preserve the integrity and effectiveness of that post in which we are serving.
Hancock v. The Board of Public Instruction of Charlotte County, 158 So.2d 519 (Fla.1963), dealt with the retention of the office and term of an incumbent in the transition period from elective to appointive superintendent when the local option being here considered was added to the constitution. It was not determinative of the fact, as such, that the office, after “going local” by vote of the people, continued the superintendent’s status as that of a “constitutional office” and thus subject to the executive hand. This asserted enlargement of the holding is the danger of attributing to dicta arising in a limited setting on a narrow issue, a broader application that intended, in order to assert some support for a new proposition. Hancock did not have the present question before it. In any event, all doubt of the distinction herein outlined was removed by the 1968 Constitution subsequently enacted which completely deleted the term “office” in the provision, leaving it open to the alternative of having an employed superintendent under local option. Thus the two types of superintendent became expressly the antithesis of each other.
One distinction with regard to the duties in the two categories is that none is spelled out in the constitution which would apply to an elected superintendent but F.S. § 230.321 refers specifically to employed superintendents of schools and then states as follows:
“His duties relating to the district school system shall be as provided by law and rules and regulations of the state board of education.” (emphasis added)
There is no provision that the duties of an elected superintendent may be spelled out by regulations of the State Board of Education.
An early case of some parallel in distinguishing constitutional officers is State v. Hocker, 39 Fla. 477, 22 So. 721, p. 723 (1897), wherein it is stated:
“ ‘The term “office” implies a delegation of a portion of the sovereign power to, and possession of it by, the person filling the office; a public office being an agency for the state, and the person whose duty it is to perform the agency being a public officer. The term embraces the idea of tenure, duration, emolument, and duties, and has respect to a permanent public trust to be exercised in behalf of government, and not to a merely transient, occasional, or incidental employment.’ ” (emphasis added)
It is thus seen that the two categories were early distinguished in this respect as to whether the office was constitutional in nature or one of employment only..
Noteworthy with respect to executive suspension is the term used of “state officer” in the suspension and removal Art. IV, § 7. The superintendent is serving as an “employee” under local option and employees are not the subject of this constitutional right of suspension or removal. The “removal” is later required to be by vote of the State Senate (after a suspension by the Governor) and we are not aware that this has ever been contemplated as to state employees.
It is our view, therefore, that, where a school district, as here, has decided on the course of an employed superintendent, that district’s school board has the sole authority and responsibility to remove its employed superintendent who is subject to the direction, hiring and firing by the employing authority, namely, the Orange County School Board. It would be an intolerable situation that would also allow his suspension by the Governor, thus subjecting a superintendent to the tenuous position of having to please “two masters.” [1] This is *370 of course never a good situation; it poses all kinds of diverse questions, creates confusion and a lack of direction; moreover, it compromises the necessary discipline by the true authority.
The dual authority which is advocated would allow one “head” to override the other in removing the superintendent, despite the fact that he may be carrying out his duties to the satisfaction of his “other master.” To allow the advocated executive authority in these circumstances could raise a similar question as to other administrative agencies, despite a direct employer-employee relationship, as in the instance of the state highway patrol, state commissions and departments, and county agencies as well. This would be a most dangerous and disruptive precedent and one without legal basis.
There should be a clear delineation of authority in employment relationships; a unified policy should apply and, to be effective, should be carried out under the direction of a single head, in this case the school board, for the benefit of our school children and the parents involved. It is a total neighborhood involvement under a plan for local control. Orange County chose this method of operation and must exercise the courage and fortitude required to carry out the mandate of its citizens without the interference of outside authority. If the employer School Board fails to act properly in the circumstances then such school board members as may be responsible are answerable to the electorate. Furthermore, it is they who are subject to suspension by the Governor and removal by the Senate under the terms of the section of our constitution in question here, viz., Art. IV, § 7.
The channel of authority has been chosen by this county (district) and until the people of Orange County decide to change that choice, it should be allowed to stand.
It is therefore our opinion in answer to your esteemed inquiry, sir, that only the employer school board may suspend or remove its employed superintendent when the electorate has chosen the alternative plan of an employed superintendent pursuant to Fla.Const., Art. IX, § S.
Respectfully,
s/ JAMES C. ADKINS Chief Justice
s/ B. IC. ROBERTS J ustice
s/ JOSEPH A. BOYD Justice
s/ HAL P. DEKLE Justice
It is our view that both the Governor and the district school board should have the power of removal. The first question should therefore be answered in the affirmative.
We find from an inspection of pertinent provisions of the State Constitution and statutes that a superintendent of schools of a school district, though employed pursuant to the authority of Article IX, Section 5, 1968 Florida Constitution, and implementing statutes, Sections 230.241(1) and 230.-321, F.S., continues in the status of a constitutional “public officer” to whom is delegated a portion of the sovereign power.
As a constitutional officer the school superintendent is subject to the suspension power of the Governor under Article IV, Section 7 of the State Constitution as well as to removal by the Senate, similarly as are other county officers. You, as Governor, are authorized to suspend him as a part of your general executive duties under Article IV, Section 1(a), State Constitution to see that the laws are faithfully executed. This duty is a portion of the general responsibility you owe to the public to insure that certain constitutional officers shall not transgress the sanctions of Article IV, Section 7, but differs in degree from the local responsibility of the school *371 board in a school district as the contractual employer of the district superintendent of schools.
However, we do not consider your suspension power is exclusive as we explain in this, our answer to Question 2. It is our opinion that pursuant to reasonable regulations prescribed in keeping with the provisions of Section 230.321, F.S. the school board may provide in its employment contract with its school superintendent for termination of his employment during the period of his employment for good cause reasons. While the nature of the duties of the school superintendent places him in the class of a “public officer” sus-pendable by the Governor, nevertheless the new employment authority of Article IX,. Section 5 of the Constitution brings into existence the relationship of employer-employee. This being the nature of the relationship, we believe the rule expressed by us in City of Boca Raton v. Mattef (1956), 91 So.2d 644, at 647, that:
“Customarily, the employer determines both the method and manner in which the work is to be done as well as the time and tenure of the servant,” applies.
It is therefore our opinion the district school superintendent contract of employment may contain reasonable regulations for the termination by the school board of the tenure of the superintendent. These regulations should, of course, provide preliminary to a decision on termination for reasonable notice and hearing to the school superintendent in keeping with the basic principles of the Administrative Procedure Act, Chapter 120, Part II, F.S. Good cause grounds for termination by the school board of its school superintendent may be of the same nature as grounds for gubernatorial suspension but they may also include other good cause grounds which fairly and reasonably would appear warranted in the employee-employer relationship, including breaches of contract and insubordination and neglect of duty.
As we view the subject, your power of suspension of the employed school superintendent and the power of the school board to terminate his employment are not conflicting; they are exercisable within separate spheres of authority and are independent each of the other. If you suspend an employed superintendent of schools, the school board is at liberty to employ an interim superintendent pending action of the Senate. Contracts of employment can be written to conform to the described exigencies of the dual power of suspension and termination reposed in you and the school board, respectively.
Respectfully,
s/ RICHARD W. ERVIN Justice
s/ DAVID L. McCAIN Justice
s/ BEN F. OVERTON Justice

. Matthew 6:24.