Mr. S. Craig Kiser General Counsel Office of the Comptroller The Capitol Tallahassee, Florida 32301
Dear Mr. Kiser:
According to your letter, the Auditor General has recently reported several claims to the Department of Banking and Finance suggesting recovery of retroactive salary increases paid to several superintendents of schools on the basis that the exemption pertaining to salary schedules adopted by a district school board contained in s 215.425, F.S., does not apply to school superintendents. See, s 17.041(1), F.S., which states that it is the responsibility of the Department of Banking and Finance to adjust and settle, or cause to be adjusted and settled, all accounts and claims reported to it by the Auditor General against all county or district officers and employees or all other persons entrusted with, or who may have received, any property, funds or moneys of a county or district or who may be in anywise indebted to or accountable to a county or district for any property, funds, moneys or other thing of value and to require such officer, employee or person to render full accounts thereof and to yield up such property, funds, moneys or other thing of value according to the law to the officer or authority entitled by law to receive the same. In light of the Department's responsibilities under s17.041, you request the opinion of this office on the following question:
 DOES THE EXEMPTION PROVISION CONTAINED IN s 215.425, F.S., APPLY TO EITHER AN ELECTED OR APPOINTED SUPERINTENDENT OF SCHOOLS SO AS TO PERMIT A SCHOOL BOARD TO ADOPT A SALARY SCHEDULE WHICH INCLUDES A SALARY INCREASE FOR THE SUPERINTENDENT PAYABLE RETROACTIVELY TO THE BEGINNING OF THE FISCAL YEAR?
Section 215.425, F.S. (formerly s 11, Art. XVI, State Const. 1885, and converted to statutory law by s 10, Art. XII, State Const. 1968), provides:
 No extra compensation shall be made to any officer, agent, employee, or contractor after the service shall have been rendered or the contract made; nor shall any money be appropriated or paid on any claim the subject matter of which shall not have been provided for by preexisting laws, unless such compensation or claim be allowed by bill passed by two-thirds of the members elected to each house of the Legislature. However, when adopting salary schedules for a fiscal year, a district school board may apply the schedule for payment of all services rendered subsequent to July 1 of that fiscal year. . . . (e.s.)
The underscored language of s 215.425 was added by s 1, Ch. 80-114, Laws of Florida.
Thus while s 215.425, F.S., generally prohibits the payment of retroactive compensation, see, e.g., AGO 82-28, the statute contains a limited exception to its terms for district school boards adopting salary schedules for a fiscal year. The proviso, however, does not define the term "salary schedules" or otherwise attempt to regulate such schedules. Several provisions of the Florida School Code, however, relate to and provide for the adoption of salary schedules by a district school board. Section 230.23, F.S., in setting forth the duties and powers of a district school board, states in subsection (5)(c) that such board is authorized to "[a]dopt a salary schedule or salary schedules to be used as a basis for paying all school employees . . . and fix and authorize the compensation of school employees on the basis of such schedules." See, s 4, Ch. 80-295, Laws of Florida, which deleted a reference to members of the instructional staff formerly contained in s 230.23(5)(c) so that the statute now merely provides for the adoption of salary schedules for school employees; a similar reference to members of the instructional staff was also deleted by Ch. 80-295 from s 230.33(7)(e), F.S. 1979, renumbered as s 230.33(7)(b), F.S., which requires the school superintendent to prepare and recommend to the school board salary schedules to be used as the basis for paying school employees. Compare, s 230.23(5)(d) which provides that "[a]ll contracts with members of the instructional staff shall be in accordance with the salary schedule adopted by the school board . . . ." Section 236.02(4)(b), F.S., requires each school district participating in the state appropriations for the Florida Educational Finance Program to pay all personnel "in accordance with payroll period schedules adopted by the school board and included in the official salary schedule." See, s 236.02(5), F.S., requiring school boards to "[e]xpend funds for salaries in accordance with a salary schedule or schedules adopted by the school board in accordance with the provisions of law and regulations of the state board." And see, Rule 6A-1.52, F.A.C., which provides that each school board shall annually adopt and spread on its minutes a salary schedule or schedules for employees of the district school system and that all personnel shall be paid in accordance with the payroll period schedules adopted by the school board and included in the official salary schedule.
The Auditor General in his audit of several district school boards has raised the question as to whether the foregoing statutory provisions in the Florida School Code which generally refer to the adoption of salary schedules for school employees and personnel are applicable to a school superintendent, specifically an elected superintendent. See, Audit Reports of the Auditor General, Report No. 10153, paragraph 30, District School Board, Escambia County, June 30, 1981; Report No. 10234, paragraph 61, District School Board, Washington County, June 30, 1982; Report No. 10299, paragraph 48, District School Board, Okaloosa County, June 30, 1982; Report No. 10309, paragraph 74, District School Board, Suwannee County, June 30, 1982, wherein the Auditor General stated that "[s]ince the Superintendent is an elected official, it appears that those provisions of law relating to the compensation of employees may not be applicable to the Superintendent." And see, s 5, Art. IX, State Const., which provides for the election of the superintendent of schools except "when provided by resolution of the district school board, or by special law, approved by vote of the electors, the district school superintendent in any school district shall be employed by the district school board as provided by general law." In those districts authorized to employ a superintendent under s 5, Art. IX, State Const., the school board is authorized to enter into contracts of employment with such superintendents, to adopt rules and regulations relating to their appointment and to "pay to the superintendent of schools a reasonable annual salary." See, s 230.321(2) and (3), F.S. While s 230.321 requires the school board to pay an appointed superintendent "a reasonable annual salary," it does not prohibit the board from adopting a salary schedule for an "employee" superintendent or from including such superintendent within a salary schedule for "all school employees;" nor does s215.425, F.S. And see, s 230.03 (2), F.S., providing that district school boards may exercise any power except as expressly prohibited by the Constitution or general law. See generally, In re Advisory Opinion to the Governor, 298 So.2d 366, 368 (Fla. 1974), wherein the Florida Supreme Court, in holding that a school board has the sole authority to remove an employed superintendent and that such superintendent is not subject to suspension by the Governor, stated:
 Fla. Const., Art. IX, s 5, sets forth a clear distinction between those instances in which school districts remain under the constitutional category of elected school superintendents and that separate class of superintendents created by constitutional amendment wherein districts are allowed to vote to have a locally employed superintendent. . . . Such an entirely new plan created by express constitutional amendment submitted to a statewide vote was not merely to change the "means of selection" of the superintendent and nothing else. . . . This optional method constituted an entirely different scheme as opposed to that of election of the superintendent as a constitutional officer. It provided a separate local option of local employment and service of a superintendent under the district school board. (e.s.)
Based upon the language contained in both the Constitution and statutes relating to the "employment" of such appointed superintendents, and in the absence of any express constitutional or statutory prohibition or any judicial guidance on this matter, I cannot say that such appointed superintendents may not be considered to be "employees" for purposes of s 230.23(5)(c), F.S., authorizing the school board to adopt salary schedules for school employees. But see, s 230.321(1), F.S., stating in part that "[i]n every district authorized to employ a superintendent of schools under Art. IX of the State Constitution, he shall be the executive officer of the school board . . . ."
The Auditor General's criticism in the instant inquiry, however, concerns the payment of retroactive compensation to elected superintendents since such superintendents as elected officials would not appear to fall within the terms of the foregoing statutory provisions relating to school "employees." Section 230.303, F.S., sets forth the salaries of these elected superintendents although the statute specifically recognizes the authority of a district school board to adopt by majority vote a salary in excess of the amount specified therein. The statute, however, is silent as to the adoption of a salary schedule by the school board for such elected superintendents.
This office has previously stated that with the amendment of s 230.03(2), F.S., in 1983 by s 7, Ch. 83-324, Laws of Florida, district school boards have been granted "home rule" powers and thus may exercise any power for school purposes in the operation, control and supervision of the free public schools in their districts unless expressly prohibited by the State Constitution or general law. And see, s 230.03(2), F.S., which provides that
 In accordance with the provisions of s. 4(b) of Art. IX of the State Constitution, district school boards shall operate, control, and supervise all free public schools in their respective districts and may exercise any power except as expressly prohibited by the State Constitution or general law. (e.s.)
I am not aware of any provision in the State Constitution which expressly prohibits a district school board from adopting a salary schedule for its superintendent of schools. Compare, s 5(c), Art. II, State Const., which requires that the powers, duties, compensation and method of payment of state and county officers be fixed by law; and AGO's 81-7 and 77-88 stating that pursuant to the foregoing constitutional mandate, the state probably could not constitutionally prescribe that a county charter provide that the salaries of all county officers be provided by ordinance or delegate to the county commission the authority to fix by ordinance the compensation of all county officers. Moreover, neither the statutes providing for the adoption of salary schedules by a district school board and for the expenditure of funds for salaries in accordance with such schedules, e.g., ss 230.23(5)(c), 236.02(4)(b) and (5), nor those provisions relating to the compensation of school superintendents, whether elected or appointed, e.g., ss 230.303 and 230.321, F.S., expressly prohibit the adoption or use of a salary schedule for payment of the school superintendent. See generally, 35 C.J.S. Expressly p. 342, defining the term to mean definitely, explicitly, in direct or unmistakable terms, distinctly, not by implication; see also, Webster's Third International Dictionary, Express p. 803; 35 C.J.S. Express p. 338; Pierce v. Division of Retirement,410 So.2d 669, 671-672 (2 D.C.A. Fla., 1982); Edwards v. State,422 So.2d 84, 85 (2 D.C.A. Fla., 1982), citing Pierce, stating "[a]n `express' reference is one which is distinctly stated and not left to inference."
Nor can I state that the adoption of a salary schedule conflicts with any statute in the Florida School Code. Cf., AGO 83-72 stating that where a state statute distinctly specifies the method, manner or procedure in which a district school board is required to act in the exercise of its legislative or administrative duties, such legislative direction would prevail over a conflicting method or policy. While s 230.303, F.S., sets forth the salaries of elected superintendents, the statute itself recognizes that a school board may approve a salary in excess of that prescribed therein; s 230.321 relating to appointed superintendents merely provides that a school board shall pay the superintendent a "reasonable annual salary." Finally, while district school boards have a continuing responsibility to act consistently and in harmony with the applicable rules and minimum standards of the State Board of Education and to require that such rules and regulations be enforced, my examination of the rules of the state board failed to reveal any provision which would prohibit a district school board from adopting a salary schedule for a school superintendent.
Based upon the foregoing and in light of the home rule powers granted to school boards in 1983 by the amendment of s 230.03(2), F.S., I cannot state in the absence of any express constitutional or statutory prohibition or any judicial direction or precedent that a district school board does not have the authority to adopt a salary schedule for, or include within the salary schedule for school employees and personnel, the school superintendent, whether elected or appointed, or that any such salary schedule adopted by a district school board pursuant to its home rule powers would not fall within the terms of the exemption, or proviso, contained in s215.425 pertaining to salary schedules adopted by a district school board for a fiscal year.
I note, however, from the audit reports submitted to this office that the claims reported to your office involve the adoption of salary schedules and the payment of compensation to the superintendents by the school boards prior to the amendment of s 230.03(2), F.S., by s 7, Ch. 83-324, Laws of Florida, granting home rule powers to district school boards. Prior to the statute's amendment in 1983, district school boards had historically been treated in the same manner as special districts of the state, i.e., having only such powers as have been expressly granted by statute or necessarily implied therefrom. See, e.g., Harvey v. Board of Public Instruction for Sarasota County, 133 So. 868 (Fla. 1931); Buck v. McLean, 115 So.2d 764 (1 D.C.A. Fla., 1959); AGO's 83-14, 82-59, 80-73 and 80-42. I am not aware of any statute which expressly granted a district school board the authority to adopt a salary schedule for an elected superintendent. However, this office cannot conclude that a superintendent did not legally receive payment of the salary fixed and awarded by the school board based upon the adoption of a salary schedule by a district school board; such a determination regarding the actions which have been taken by a school board is a matter which must be resolved by the courts of this state.
In sum, until and unless judicially determined otherwise and in light of the home rule powers granted to district school boards under s 230.03(2), F.S., as amended in 1983, and in the absence of any constitutional or statutory provision expressly prohibiting a district school board from taking such action, this office cannot state that a district school board does not have the authority to adopt a salary schedule for, or include within salary schedules for school employees and personnel, the superintendent of schools, whether elected or appointed, or that adoption of such a schedule does not fall within the terms of the exception or exemption relating to salary schedules adopted by district school boards contained in s 215.425, F.S. Any question as to the legality of funds expended pursuant to a salary schedule adopted for school superintendents prior to the amendment of s 230.03(2), F.S., by Ch. 83-324, Laws of Florida, granting home rule powers to district school boards is a matter which must be resolved by the courts.
Sincerely,
Jim Smith Attorney General
Prepared by:
Joslyn Wilson Assistant Attorney General